MILLER, Respondent, v. INSURANCE COMPANY OF NORTH AMERICA, Appellant.

St. Louis Court of Appeals, April 12, 1904.

1. **INSURANCE: Removal of Goods: Waiver.** In an action on an insurance policy for the destruction of goods, the insurer set up a defense that the goods had been removed from the premises without its consent endorsed thereon as required by the terms of the policy, and plaintiff claimed a waiver of the forfeiture. Plaintiff testified that he notified the agent of the defendant of his intention to remove the property, the agent informed him that the insurance would cost more money in the place to which the goods were moved and plaintiff stated to him that he had better fix the papers. *Held*, that this would not constitute a waiver of the forfeiture; the evidence indicated that the insured depended upon the company's agent to fix the insurance for him and thus constituted such agent his own agent and the company could not be bound by the neglect.

2. ———: **Forfeiture: Waiver: Agency.** An agent of an insurance company, with power to make contracts of insurance and to countersign and deliver policies, has power to waive the forfeiture of a policy, and where a policy issued by him has been forfeited with his knowledge, he must return the unearned premium to the insured, and the failure to do so is evidence of a waiver of the forfeiture.

3. ———: ———: ———. Where there were three items of insurance, two on real estate and one on goods, and the premium was in a lump sum for the three, the forfeiture, caused by the removal of the goods, contrary to the terms of the policy, was not waived by the knowledge of the agent that the goods were removed and his failure to offer to return the premium, it being nowhere shown what portion of the premium was paid for insurance on the furniture.

4. ———: ———: ———. The forfeiture was not waived, where the plaintiff's evidence tended to show that she led the company's agent to believe she would procure new insurance on the goods and use the unearned premium in part payment for same.

Appeal from Stoddard Cicuit Court.—*Hon. James L. Fort,* Judge.

REVERSED.

*Yates, Mastin & Howell* for appellant.

(1)   When respondent removed the property from the house in Dexter to the farmhouse outside of Dexter, the insurance thereon ceased and determined under the law, the location of the property insured being of the essence of the contract. The court should therefore have given appellant's instructions numbered 1, 2 and 3, and rendered judgment in its favor. Giboney v. Ins. Co., 48 Mo. App. 184; Harris v. Ins. Co., 53 Iowa 236; Wood on Insurance, 113, 114 and 115. (2)   Under the terms of the policy, upon the removal of the property to a different location, the insurance ceased and determined, the property being insured only while located and contained as described in the policy, and not elsewhere, and all the while and only while contained in the house in Dexter, Missouri. Hoover v. Ins. Co., 93 Mo. App. 118; Tesson v. Ins. Co., 40 Mo. 33; Ins. Co. v. Cass County, 151 U. S. 452; Renshaw v. Ins. Co., 103 Mo. 595; Brewing Co. v. Ins. Co., 63 Mo. App. 663.

*Liles & Munger* for respondent.

(1)   As to appellant's first point in its assignment of errors respondent contends that the waiver of forfeiture relied upon by her is specifically pleaded in her petition and denied in appellant's answer. The question of waiver, when properly raised, is a question of

fact to be determined by the trier of fact just as other questions of fact are determined. Lead & Zinc Co. v. Ins. Co., 27 Mo. App. 446; Giboney v. Ins. Co., 48 Mo. App. 185; James v. Ins. Co., 148 Mo. 1. (2) Mr. Mohrstadt wrote the policy sued on, received five years' premium and in behalf of his principal and with its express sanction as shown by its answer, waived all objection to the assignment of the policy to the respondent. This makes him the general agent of appellant. Nickels v. Ins. Co., 144 Mo.; Laundry Co. v. Ins. Co., 151 Mo. 90. And as such general agent he was authorized to waive conditions of forfeiture in policies issued by him for appellant is the well-established rule in this State. (3) This waiver may become binding upon the insurer in the following ways: (a) By accepting and retaining premium with knowledge on the part of the general agent of the insurer that, under the letter of the policy, the insurance company would not be liable on the policy should a fire occur. O'Brien v. Ins. Co., 95 Mo. App. 301; Scott v. Ins. Co., 69 Mo. App. 337. (b) By failure to notify insured when policy becomes subject to a forfeiture, especially if the knowledge of the facts that would avoid it is in the possession of the company or its general agent and not in the possession of the insured to the end that the insured may have an opportunity to protect his property from loss through the avoidance of an insurance policy which the acts of the insurance company had induced him to believe was valid. Trust Co. v. Ins. Co., 79 Mo. App. 362; Hamilton v. Ins. Co., 94 Mo. 368; Parsons v. Ins. Co., 132 Mo. 583. (c) By retaining the unearned premium upon a policy that, to the knowledge of the insurer or its general agent, has been, under the strict letter of the same, avoided by the unwitting conduct of the insured. (d) And finally, a forfeiture can be waived by the words of a general agent of an insurance company when acted upon by the insurer to his hurt. McCollum v. Ins. Co., 67 Mo. App. 80.

BLAND, P. J.—On January 26, 1900, the defendant issued its policy of insurance to William Miller, whereby for a consideration of $36.50 to it paid, it insured said Miller's property against loss or damage by fire for a term of five years as follows: Fifteen hundred dollars on his dwellinghouse situated in the city of Dexter; five hundred dollars on his household and kitchen furniture located and contained in said dwelling house, and two hundred dollars on his stable. Afterwards, on May 29, 1902, William Miller, with the consent of the defendant company (indorsed on the back of the policy), assigned the same in writing to his wife, the plaintiff herein. In July, 1902, William Miller, with his wife, moved from the city of Dexter to his farm in the country and moved thereto all the household and kitchen furniture covered by the policy of insurance. On the 2nd day of March, 1903, Miller's country house with the household and kitchen furniture described in the policy sued on, was totally destroyed by fire. The defendant denied any liability on the policy for the loss, and this suit was brought to recover the five hundred dollars for which the household and kitchen furniture was insured. The contention of the defendant is, that by moving the household and kitchen furniture from the premises where it was situated when insured, the contract as to this property was forfeited, according to the terms of the policy. The plaintiff concedes the contention that the insurance did not follow the furniture to the country home of Miller, but contends that defendant waived the forfeiture. The evidence on which plaintiff relies to show a waiver of the forfeiture is first, that E. C. Mohrstadt (the agent of defendant who issued the policy) knew that plaintiff intended to move the furniture before it was moved and did not object thereto, knew when it was moved and did not return, or offer to return, any part of the premium; second, that Mohrstadt had been taking care of William Miller's insur-

ance for him and at Miller's request had kept the policy sued on in his possession until after the fire; third, the following evidence of William Miller, who testified that he was acting as the agent of his wife, to-wit:

"Q. When did you first speak to Mr. Mohrstadt about it for your wife? A. It was in January after I moved all this stuff; over half of our stuff was left in the house.

"Q. You never obtained any consent from him beforehand to move the goods? A. No, sir.

"Q. You never obtained any consent from him to move the goods? A. No, sir.

"Q. At this time in January, you say you said to him what? A. Well, that was after I had finished moving my goods—my piano and my carpets and bedding was all stored away in one room, and when we finished that, I went to Mohrstadt and asked him about my insurance and he said it was all right, but would cost more money.

"Q. Did he tell you why? A. Yes, sir; because in the country and on account of water.

"Q. Did you tell him that your wife was willing to pay more money? A. I says, 'Well, you had better fix the papers,' that is what I said. . . .

"Q. Did Mr. Mohrstadt say to you, 'I'll fix the policy?' A. No, sir; I can not say that he said, 'I will.'

"Q. He never said so? A. No, sir; he never said 'I will' it was just as I say, when I told him about it as I stopped at the bank and I never said anything more about it for he had insurance on the buildings and furniture before this and when it run out he fixed it up and I would pay him for it."

In regard to this conversation with Miller, Mohrstadt's evidence is as follows:

"Mr. Miller came into the bank and said to me, 'I ought to have my policy transferred,' and I says to him, 'Yes, if that property is all removed you ought to have it

transferred, but the rate however, in the country is more than it is in the city;' that was all the conversation I remember of having with Mr. Miller in reference to that.''

This witness further testified that he did not know whether defendant insured farm property or not, that he would have to look before he could answer as to that.

Plaintiff offered a letter written to her by D. R. Davenport, state agent of defendant, in respect to the proofs of loss she had made out and forwarded to the company. This letter is dated April 30, 1903. The letter, after stating various objections to the proofs of loss, continued as follows:

''I also find that we insured the personal property specifically mentioned in our said policy, all while and only while, contained in the two-story, frame building, with shingle roof, situated on the east side of Walnut street in the south end of the city of Dexter, Missouri, and not elsewhere.

''From your purported proofs, however, I find that you had removed this identical personal property from the only place that we ever insured it to a farm in the country, without getting permission for such removal indorsed in writing on said policy, which removal made the policy then and there absolutely null and void; and as we never insured any class of household and kitchen furniture located in the country against fire or lightning, we absolutely deny that we owe you anything at all, and you need not go to any trouble or expense to remedy the numerous defects in your purported proof of loss; and had you asked us to make an indorsement on said policy permitting removal of your household effects to the country, we would have positively refused to make such an indorsement, as we always do, for we do not insure what we term farm property or property located in the country, against either fire or lightning.

''Had you allowed the personal property specifically described in our said policy to remain in the build-

ing where it was located and contained at the time our policy was issued, it would not have been destroyed by fire.                                           Yours truly,

"D. R. DAVENPORT,

"State Agent."

.  By introducing this letter plaintiff showed the fact to be, that defendant was not engaged in insuring farm property, and Mohrstadt was without authority to agree to transfer the insurance on the furniture to the country home of plaintiff.  But the evidence is insufficient to show that he agreed to make any such transfer.  The fact that Miller said to him, "You had better fix the papers," does not prove that Mohrstadt agreed to fix them, and there is no evidence that he so agreed.  The evidence of Miller indicates that he depended upon Mohrstadt to fix the insurance for him.  If he did this he constituted Mohrstadt his agent for that purpose and if he relied upon him to fix the papers, then he relied upon his own agent and must suffer the consequences of the neglect of his agent to do what he supposed he would do.  The company can not be bound by this neglect.  That the policy was forfeited so far as the furniture is concerned there can be no question.  Giboney v. Ins. Co., 48 Mo. App. 185; Hoover v. Ins. Co., 93 Mo. App. 111; Brewing Co. v. Ins. Co., 63 Mo. App. 663.

But it is contended that defendant waived the forfeiture.  The evidence relied on to prove waiver is that the agent of the defendant knew the furniture had been removed to the country and did not return or offer to return the unearned premium for the insurance on the same.  It has been repeatedly held in this State that an agent of an insurance company, with power to make contracts of insurance and to countersign and deliver policies, has power to waive forfeiture and that where a policy issued by him has been forfeited and he has knowledge of the fact, good faith requires that he return the unearned premium to the insured and his failure to do so is evidence of waiver of the forfeiture.  Trust

Company v. Insurance Co., 79 Mo. App. 1. c. 365, and cases cited. There are two insuperable objections to the application of this doctrine to this case. First, the premium was in a lump sum for the insurance on the dwelling, the stable and the furniture. There was no forfeiture of the insurance on the dwelling and stable and it is nowhere shown what portion of premium paid was for the insurance on the furniture. Second, it is shown by plaintiff's evidence that she led Mohrstadt to believe she would have the insurance on the furniture transferred or procure new insurance and use the unearned premium, whatever it may have been, on the furniture to apply in part payment of such transfer or new insurance. There being no waiver nothing, short of a new contract modifying the original contract of insurance on the furniture could have resuscitated this feature of the policy. The evidence falls far short of showing any such agreement to modify or change the stipulation of the policy in respect to the location and situation of the furniture, and we think the trial court should have granted defendant's instruction in the nature of a demurrer to plaintiff's evidence.

Judgment reversed. *Reyburn* and *Goode, JJ.*, concur.